**Roderick DAVIE, Petitioner**

v.

**Betty MITCHELL, Warden, Respondent**

**No. 1:99 CV 2400.**

United States District Court, N.D. Ohio, Western Division.

June 29, 2004.

David C. Stebbins, Columbus, OH, J. Joseph Bodine, Jr., Office of the Attorney General, State of Ohio, Corrections Litigation Section, Columbus, OH, Kathleen McGarry, McGarry Law Office, Glorieta, NM, Randall L. Porter, Office of the Public Defender, State of Ohio, Columbus, OH, Richard M. Kerger, Kerger & Kerger, Toledo, OH, for Roderick Davie, Petitioner.

Daniel R. Ranke, Office of the Attorney General, State of Ohio, Capital Crimes Section, Cleveland, OH, Jon W. Oebker, Office of the Prosecuting Attorney, Cleveland, OH, Stephen E. Maher, Office of the Attorney General, State of Ohio, Capital Crimes Section, Columbus, OH, Stuart A. Cole, Office of the Attorney General, State of Ohio, Corrections Litigation Section, Columbus, OH, for Betty Mitchell, Respondent.

## ORDER

CARR, District Judge.

This is a capital habeas corpus case in which the petitioner applied for, but was

denied, relief. The petitioner appealed this matter to the Sixth Circuit Court of Appeals. That Court advised that it could not proceed with the appeal until "the district court judge who entered the judgment ... either issue[s] a certificate of appealability or state[s] the reasons why such a certificate should not issue" pursuant to Federal Rule of Appellate Procedure 22(b). *Appeal Letter*, doc. no. 193. The petitioner now has filed an application for certificate of appealability (hereinafter "COA") under 28 U.S.C. § 2253(c)(1)(A), seeking a COA as to twenty-four claims presented in the petition. The respondent opposed the motion. Thereafter, the respondent filed a supplemental response, noting the effects of *Landrum v. Anderson*, 185 F.Supp.2d 868 (S.D.Ohio 2002), on the petitioner's COA application. The petitioner filed a supplemental reply.

For the reasons that follow, I conclude that a COA will issue as to the defaulted status of claims 18(b) and (c), 34, 50, and 51, and the merits of part of claims 1 and 2.

## Standard of Review

The Sixth Circuit has held in two opinions that neither a blanket grant nor a blanket denial of a COA is an appropriate means by which to conduct a COA analysis as it "undermine[s] the gate keeping function of certificates of appealability, which ideally should separate the constitutional claims that merit the close attention of counsel and this court from those claims that have little or no viability." *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001); *see also Murphy v. Ohio*, 263 F.3d 466 (6th Cir.2001) (remanding motion for certificate of appealability to district court for analysis of claims). Thus, any COA analysis must commence with a determination of whether it is appropriate to grant a COA as to any of the claims the petitioner presented in the petition pursuant to 28 U.S.C. § 2253.

That statute states in relevant part:

(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court;

> \* \* \* \* \* \*

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

28 U.S.C. § 2253. This language is identical to the requirements set forth in the pre-AEDPA statutes, requiring the habeas petitioner to obtain a Certificate of Probable Cause. The sole difference between the pre- and post-AEDPA statutes is that the petitioner now must demonstrate he was denied a *constitutional* right, rather than the federal right that was required prior to the AEDPA's enactment.

The United States Supreme Court interpreted the significance of the revision between the pre- and post-AEDPA versions of the statute in *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). In that case, the Court held that § 2253 codified the standard set forth in *Barefoot v. Estelle*, 463 U.S. 880, 103 S.Ct. 3383, 77 L.Ed.2d 1090 (1983), but for the substitution of the word "constitutional" for "federal" in the statute. *Id.* at 483, 120 S.Ct. 1595. Thus, the Court determined that

> [t]o obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under *Barefoot*, includes showing that reasonable jurists could debate whether (or, for that

matter, agree that) the petition should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further."

*Id.* at 483–84, 120 S.Ct. 1595 (quoting *Barefoot,* 463 U.S. at 893 n. 4, 103 S.Ct. 3383).

The Court distinguished the analysis a habeas court must perform depending on its finding concerning the defaulted status of the claim. If the claim is not procedurally defaulted, then a habeas court need only determine whether reasonable jurists would find the district court's decision "debatable or wrong." *Id.* at 484, 120 S.Ct. 1595. The Court further explained in *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003), that a petitioner seeking a COA must prove something more than the "absence of frivolity." *Id.* at 338, 123 S.Ct. 1029 (quoting *Barefoot,* 463 U.S. at 893, 103 S.Ct. 3383). But a petitioner need not prove that jurists of reason would grant the petition, because "a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that the petitioner will not prevail." *Id.*

■ A court must engage in a more complicated COA analysis with regard to claims found to have been procedurally defaulted. In that circumstance, the Court stated in *Slack,* a COA should issue only if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack,* 529 U.S. at 484, 120 S.Ct. 1595 (emphasis supplied).

1. Additionally, Ohio Rule of Criminal Procedure 52(B) states:

**(B) Plain error**

## Analysis

### 1. Procedural Default

■ The petitioner claims that the procedural default analysis contained in the Order was faulty. He takes issue with the alleged failure to subject each claim to the standard enunciated in *Maupin v. Smith,* 785 F.2d 135 (6th Cir.1986). A failure to set forth the *Maupin* factors explicitly, however, does not render the defaulted status of a claim debatable among jurists of reason. The petitioner will receive a COA only on demonstrating that the decision regarding the defaulted status of an individual claim was debatable among jurists of reason. That analysis is set forth below.

### a. claims raised on direct appeal

■ Several claims the petitioner raised in the petition were raised on direct appeal to the Ohio Supreme Court. That court reviewed the merits of some of these claims pursuant to a plain error analysis. Ohio courts have determined that a failure to object contemporaneously to an alleged error constitutes procedural default. *State v. Williams,* 51 Ohio St.2d 112, 364 N.E.2d 1364 (1977). If a defendant fails to object to a trial error that would affect a substantial right, then the appellate courts will conduct a plain error analysis of that claim. *State v. Slagle,* 65 Ohio St.3d 597, 605 N.E.2d 916, 925 (1992).[1]

The Sixth Circuit found in *Scott v. Mitchell,* 209 F.3d 854, 867 (6th Cir.2000), that Ohio's contemporaneous objection rule was an independent state ground barring review. Moreover, the *Scott* Court noted that an alternative holding in which the state court examines the merits of a claim

Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

in performing a plain error analysis does not constitute a waiver of the state procedural bar. *Id.* at 867–68. Furthermore, in *Seymour v. Walker,* 224 F.3d 542, 557 (6th Cir.2000), the Sixth Circuit explicitly held that, "[c]ontrolling precedent in our circuit indicates that plain error review does not constitute a waiver of state procedural default rules." Thus, to obtain a merit review of these claims a habeas petitioner must demonstrate cause and prejudice to excuse the default.

On direct appeal, the Ohio Supreme Court performed a plain error analysis on claims 11 (admission of cause of death and crime scene evidence), 18(a) (prosecutorial misconduct during opening statement), part of 18(b) (prosecutorial comments regarding choice of defense), part of 18(c) (prosecutorial comments regarding failure of defense fingerprint expert to testify), and part of claim 34(prosecutorial comments during mitigation phase). Because no jurist of reason would debate that a plain error analysis is tantamount to a procedural default, no COA will issue for the claims or sub-claims on which the Ohio Supreme Court performed a plain error analysis.

■ The Ohio Supreme found in claim 18(c), however, that "Davie's failure to object to two of the three comments waives all but plain error." *State v. Davie,* 80 Ohio St.3d 311, 330, 686 N.E.2d 245, 263 (1997). Consequently, one comment that the petitioner raised on direct appeal was apparently preserved for appeal. Similarly, the Ohio Supreme Court noted that of the four prosecutorial comments during mitigation about which the petitioner complained, "[t]he defense objected to the second and third comments, but did not object to the first and fourth." *Id.* Finally, the Ohio Supreme Court noted when reviewing claim 18(b) that the petitioner objected to one of the prosecutor's comments during trial. *Id.* at 263. Thus, the defaulted

status of these claims is debatable. Accordingly, a COA will issue on the defaulted status of the prosecutorial comment regarding the defense's failure to call his fingerprint expert to testify during trial and the two comments regarding the prosecutorial mitigation-phase comments to which defense counsel objected. No COA will issue for the remaining claims discussed above.

### b. claim first raised in first post-conviction proceeding

■ The petitioner first raised claim 17(a) (ineffective assistance of trial counsel for failure to adequately investigate guilt issues) in his first petition for post-conviction relief. On appeal from the post-conviction court's dismissal of that claim, the Eleventh District Court of Appeals found that much of the evidence that the petitioner used to support this claim was contained in the record. *State v. Davie,* No. 97–T–0175, 1998 WL 684157, at *3 (Ohio Ct.App. Sept. 25, 1998). The court held that the petitioner's reliance on those materials rendered any portion of the claim relying on it barred by *res judicata,* citing *State v. Perry,* 10 Ohio St.2d 175, 226 N.E.2d 104 (1967) (holding that any claim that was raised or could have been raised on direct appeal is barred from review on post conviction under the doctrine of *res judicata* ).

The Sixth Circuit has held that the *Perry* rule is an adequate and independent state ground to bar a merit review of a petitioner's claim where such claim is asserted in non-compliance with that rule. *Buell v. Mitchell,* 274 F.3d 337, 349 (6th Cir.2001) ("This court has held that [the *Perry* rule] is regularly and consistently applied by Ohio courts as required by the four-part *Maupin* test.") (citing *Byrd v. Collins,* 209 F.3d 486, 521–22 (6th Cir. 2000), *cert. denied,* 531 U.S. 1186, 121 S.Ct.

1176, 148 L.Ed.2d 1034 (2001)). *See also Mapes v. Coyle,* 171 F.3d 408, 420 (6th Cir.1999), *cert. denied,* 528 U.S. 946, 120 S.Ct. 369, 145 L.Ed.2d 284 (1999) (noting that the *Perry* rule has been consistently applied).

Because the petitioner violated the *Perry* rule when asserting claim 17(a) in his first post-conviction petition, that claim is procedurally defaulted. No jurist of reason would debate this holding. Thus, no COA will issue for this sub-claim.

### c. claims first raised on second post-conviction petition

The petitioner raised the following claims in his second post-conviction petition: claim 9(trial court restricted defense questioning of venire); claim 17(b) (ineffective assistance of counsel for improperly characterizing death and life sentences); 18(d) (prosecutorial use of perjured testimony); 29(tainted jury); 30(b) (prosecution questioning caused jurors to disregard youth as a mitigating factor); 32(trial court appointment of incompetent expert); 36(trial court instruction that life sentence must be unanimous); 37(trial court "acquittal first" instruction); and, 39(trial court improper instruction regarding "outweigh").

■ On appeal from the post-conviction court's denial of his successive petition, the Eleventh District Court of Appeals affirmed the trial court's finding that the petitioner did not satisfy the requirements of Ohio Revised Code § 2953.23, which must be met for a post-conviction court to consider the merits of a successive petition.[2] While the petitioner challenges the validity of this statute, he cites no authority to support the proposition that Ohio's post-conviction process violates a post-conviction petitioner's constitutional rights. Accordingly, a reasonable jurist would unequivocally find that claims raised during this proceeding are procedurally defaulted. No COA will issue for claims the petitioner first raised during his second post-conviction proceedings.

### d. claims first raised in federal habeas proceeding

The petitioner first raised claims 30(a) (trial court excluded petitioner's expert from testifying about post-concussion syndrome), 31(trial court violated holding of *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), by failing to appoint a neurologist), part of 17(a) (ineffective assistance of counsel for failure to investigate adequately Gordon Lofton, the fingerprints of others, and the existence of a second weapon), part of 17(c) (ineffective assistance of counsel for failure to question pre-trial witness statements), and 17(d) (catch-all ineffectiveness) during this habeas proceeding. Thus, he has failed to exhaust these claims in state court yet has no remaining state-court avenue in which to pursue them.

■ A petitioner "cannot obtain federal habeas relief under 28 U.S.C. § 2254 unless he has completely exhausted his available state court remedies to the state's highest court." *Buell v. Mitchell,* 274 F.3d 337, 349 (6th Cir.2001) (quoting *Coleman v. Mitchell,* 244 F.3d 533, 538 (6th Cir.2001), *cert. denied,* 534 U.S. 977, 122 S.Ct. 405, 151 L.Ed.2d 307 (2001)) (internal quotation marks omitted). A ha-

---

**2.** That statute states that a petitioner may not obtain a review on the merits of a claim raised in a successive petition unless a petitioner demonstrates that he or she either was unavoidably delayed from raising a claim earlier or that the or that the United States Supreme Court recognized a new applicable state or federal right, or that, by clear and convincing evidence no reasonable factfinder would have convicted a petitioner or found for a sentence of death but for constitutional error that occurred during trial. Ohio Rev. Code. § 2953.23.

beas court need not wait for exhaustion if it determines that a return to state court would be futile. *Lott v. Coyle,* 261 F.3d 594, 608 (6th Cir.2001). In circumstances where, as here, the petitioner has failed to present a claim in state court, a habeas court may deem that claim procedurally defaulted because the Ohio state courts would no longer entertain the claim. *Buell,* 274 F.3d at 349. To obtain a merit review of the claim, the petitioner must demonstrate cause and prejudice to excuse his failure to raise the claim in state court, or that a miscarriage of justice would occur were the habeas court to refuse to address the claim on its merits. *Seymour v. Walker,* 224 F.3d 542, 550 (6th Cir.2000) (citing *Wainwright v. Sykes,* 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).

■ Because the petitioner did not raise any of the above-listed claims in his state-court proceedings, they are procedurally barred from federal habeas review. While the petitioner raised claim 31 as an ineffective assistance of counsel claim in his first post-conviction petition, he did not raise it as a discreet claim at any juncture in his state-court appeals. Thus, it is unexhausted. An ineffective assistance of counsel claim is distinct from a claim that merely raises the underlying grounds on which an ineffective assistance of counsel claim is based. The former requires an analysis pursuant to *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and its progeny, while the latter requires a separate analysis. A reasonable jurist would not find to the contrary. Accordingly, no COA will issue for claims that the petitioner first raised in his federal habeas petition.

### e. claims first raised in the application to reopen but raised as distinct claims here

■ The petitioner first raised claims 33(a) and (b) (ineffective assistance of trial counsel during mitigation) and 43(trial court's failure to instruct jury that it did not have to be unanimous in finding a mitigating factor) during his application to reopen the direct appeal pursuant to Ohio Rule of Appellate Procedure 26(B) (hereinafter "application to reopen" or "*Murnahan* application"), alleging that his appellate counsel were ineffective.[3] Both these claims are unequivocally procedurally defaulted.

First, claims 33(a), 33(b), and 43 are procedurally defaulted because the petitioner raised them in the habeas petition not as an ineffective assistance of appellate claims, but as ineffective assistance of trial counsel and trial court error claims. Although the Ohio Supreme Court arguably addressed the merits of claims 33(a) and (b) during the *Murnahan* application, it addressed them in the context of appellate counsel's failure to raise this issue on appeal, rather than as an ineffective assistance of trial counsel claim. The Ohio Supreme Court similarly addressed claim 43, rather than reviewing it as the trial court error claim raised in the habeas petition.

Because the claims were raised in state court under a different theory than the petitioner raised them in the federal habe-

---

**3.** The rule creating this proceeding states in relevant part:

  **(B) Application for reopening**
    (1) a defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.
  Ohio R.App. P. 26(B).

as petition, they are procedurally default-ed. *See Wong v. Money,* 142 F.3d 313, 322 (6th Cir.1998) (holding that, to exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court."). No reasonable jurist would dis-pute this finding. A COA will not issue for the defaulted status of claims 33(a) and (b) and 43.

### f. claims first raised in application to reopen and raised as appellate counsel claims here

■ Unlike claims 33 and 43, the peti-tioner raised claims 50 and 51 as ineffec-tive assistance of appellate counsel claims both in the application to reopen and in the habeas petition. In reviewing the applica-tion to reopen, the Eleventh District Court of Appeals found that the petitioner did not demonstrate sufficient "good cause" to excuse his filing outside of the 90 days required under Rule 26(B). On appeal, the Ohio Supreme Court did not explicitly state that it was affirming the Court of Appeals' procedural bar, and instead ad-dressed the merits of the petitioner's claims.

The petitioner asserts that the Ohio Su-preme Court's failure to address the pro-cedural bar in his case is not atypical. He contends that, because the Ohio Supreme Court has inconsistently applied the timing requirement of Rule 26(b), it should not be considered an adequate and independent state procedural ground on which a federal habeas court may find procedural default.

Both parties briefed this issue in light of *Landrum v. Anderson,* 185 F.Supp.2d 868 (S.D.Ohio 2002). In that case, the court ruled on the precise issue present here, *i.e.,* whether the timing requirement of Rule 26(B) is an adequate and independent state ground on which to base a procedural default. Specifically at issue was the ques-tion of whether the Ohio Supreme Court has consistently applied this rule. The *Landrum* court held that because the Ohio Supreme Court recently has disregarded the timing requirement in capital cases and has addressed the merits of the appli-cant's ineffective assistance of appellate counsel claims, it could not be considered "firmly established" for procedural default purposes. Consequently, the *Landrum* court concluded, the claims at issue there could be decided on the merits.

In apparent opposition to the *Landrum* holding, the Sixth Circuit has found, argu-ably in *dicta,* that Rule 26(B) was an ade-quate and independent state ground. In *Monzo v. Edwards,* 281 F.3d 568, 578 (6th Cir.2002),[4] the Sixth Circuit held that the Ohio Supreme Court sufficiently defined the "good cause" exception to Rule 26(B) in *State v. Reddick,* 72 Ohio St.3d 88, 647 N.E.2d 784 (1995). It held, "we find the state courts relied on an adequate and independent state procedural ground to foreclose review of petitioner's *Murnahan* claim." *Id.* at 786. The *Monzo* Court then held alternatively that, even if the "good cause" requirement is not an ade-quate and independent state ground, the petitioner failed to demonstrate ineffective assistance of appellate counsel. Because the *Monzo* Court relied on an alternative holding, some question remains regarding the precedential effect of its Rule 26(B) holding.

The *Monzo* and *Landrum* holdings un-derscore the conclusion that jurists of rea-son could differ on this issue. Thus, a COA will issue on the defaulted status of claims 50 and 51.

### g. claim not raised on direct appeal

■ The petitioner seeks a COA for claim 54(cumulative error). While it is unclear from the record whether or if the

---

**4.** The *Landrum* decision predates the *Monzo* decision by eighteen days.

petitioner raised this claim in state court, jurists of reason would not debate its defaulted status. As stated above, pursuant to *State v. Perry*, 10 Ohio St.2d 175, 226 N.E.2d 104 (1967), a criminal appellant must raise all claims contained within the trial record on direct appeal. The petitioner's cumulative error claim raises issues in the trial record. Thus, because the petitioner could have raised this claim to the Ohio Supreme Court on direct appeal but did not, the cumulative error claim is foreclosed from federal habeas review. No reasonable jurist would debate this finding.

### h. cause and prejudice

■ The petitioner asserts that ineffective assistance of trial and appellate counsel can serve as cause to excuse any procedurally defaulted claims. Because his ineffective assistance of trial counsel claims are themselves procedurally defaulted, however, the petitioner cannot use them as cause to excuse the procedural default of other claims. *Edwards v. Carpenter*, 529 U.S. 446, 452–53, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000).

■ The petitioner's ineffective assistance of appellate counsel claims arguably are not procedurally defaulted. As discussed below, however, because they are without merit, they also may not serve as cause to excuse the default of any procedurally barred claims.

### 2. Merit Analysis

### a. post-arrest silence—claims 1 and 2

The petitioner first asserts that because the seminal United States Supreme Court case on the issue of post-arrest silence, *Oregon v. Bradshaw*, 462 U.S. 1039, 103 S.Ct. 2830, 77 L.Ed.2d 405 (1983), was itself a plurality opinion, reasonable jurists could differ on the finding that a criminal suspect "initiated" a conversation with investigators. This assertion is beside the

point. The question at issue here is whether to grant a COA based on the finding in the Order that the Ohio Supreme Court did not unreasonably apply *Bradshaw* pursuant to 28 U.S.C. § 2254(d)(1).

■ The petitioner next contends that the finding that Ohio Supreme Court's holding that he "initiated" his final conversation with investigators was reasonable, is an issue debatable by jurists of reason. He attempts to distinguish the *Bradshaw* holding, noting that in that case the defendant initiated a conversation regarding what would next happen to *him* after being charged with the crime. In his case, the petitioner notes, he merely questioned police about information they had obtained from Dwayne "Styx" Thomas and what police had told the media about Sonya Barnes. While this distinction appears to be of marginal import, a reasonable jurist might disagree, holding that the Ohio Supreme Court's application of *Bradshaw* to the petitioner's case was unreasonable because the petitioner was merely asking police about issues peripheral to his case. Consequently a reasonable jurist could find that the petitioner did not "initiate" a conversation pertaining to his criminal liability. A COA will issue for this aspect of the post-arrest silence claims.

■ No COA will issue as to the petitioner's assertion that he did not validly waive his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), as to the last interrogation session. The petitioner asserts that his response to the waiver question, in which he stated, "It don't matter, do it?" renders the waiver invalid. As stated in the Order, however, the detectives renewed the *Miranda* warnings upon the petitioner's request to speak with them and he signed the portion of the form indicating that he understood his rights.

Order, at 24. The fact that the petitioner thereafter questioned the effect of failing to sign the waiver form does not nullify his understanding of those rights. No jurist of reason would disagree.

### b. petit jury selection—claim 8

■■ No COA will issue for the petitioner's eighth claim. In his motion, the petitioner cites to *United States v. Weaver,* 267 F.3d 231 (3d Cir.2001), for the proposition that using voter registration lists to compile the venire does not in all instances shield the state from claims of racial discrimination. The applicability of this case is undermined by the very passage from which the petitioner quotes in the motion. It states, "[I]f the use of voter registration lists *over time* did have the effect of sizably underrepresenting a particular class or group on the jury venire, then under some circumstances, 'this could constitute a violation of a defendant's fair cross-section rights under the Sixth Amendment.'" *Id.* at 245 (quoting *Bryant v. Wainwright,* 686 F.2d 1373, 1378 n. 4 (11th Cir.1982)) (emphasis supplied).

The petitioner did not allege, let alone demonstrate, in his petition that the Trumbull County use of voter registration lists has led to a longstanding exclusion of African–Americans in the jury pool. Rather he merely alleged that the jury pool in his case was underrepresented by African–Americans. Thus, the case law the petitioner uses to support the issuance of a COA does not advance his position. No reasonable jurist would find to the contrary.

### c. prosecutorial misconduct— claims 18(b) and (c), 34

■■ The petitioner seeks a COA for claim 18(b), in which the prosecutor denigrated the defendant and defense counsel. In the only statement preserved for appeal, the prosecutor stated, "The defense has been classical. It's the wait and see

defense. * * * The Defense has waited and has seen from the evidence what the State had * * *." *State v. Davie,* 80 Ohio St.3d 311, 686 N.E.2d 245, 263 (1997). The trial court sustained defense counsel's objection to these comments. *Id.*

In claim 18(c), the petitioner objected to the prosecutor's comments on the defense forensic expert's failure to testify. Noting that defense counsel did not object to two of the three comments, the Ohio Supreme Court found nevertheless that the prosecutor's comments were not improper because, other than a criminal defendant, comments about a witness's failure to testify is not improper. *Id.* at 264.

Finally, the petitioner seeks a COA for prosecutorial comments preserved for appeal regarding what the prosecutor asserted were aggravating circumstances but are not listed as such under Ohio Revised Code § 2929.04(A)(1)-(10). The Ohio Supreme Court held that while the prosecutor's statement that the manner of killing is an aggravating circumstance was incorrect under Ohio law, the trial court's correct instructions to the jury ameliorated any prejudice to the petitioner. 686 N.E.2d at 263. It found no prejudice in the prosecutor's statement regarding the "mass murder" specification on similar grounds. *Id.*

In reviewing the prosecutorial comments preserved for appeal, it is clear that no reasonable jurist would debate the finding that they are without merit. As stated in the Order, none of these statements rendered the petitioner's trial so fundamentally unfair as to constitute a due process violation pursuant to *Darden v. Wainwright,* 477 U.S. 168, 169, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986). The Ohio Supreme Court was not unreasonable in so finding. No reasonable jurist would disagree.

#### d. reasonable doubt instruction— claims 19 and 35

█ The petitioner fails to demonstrate that the decision to deny his reasonable doubt instruction claims was a debatable one. To offend due process, the instruction must be of the type that could mislead the jury into finding no reasonable doubt when in fact there was some. *Holland v. United States,* 348 U.S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954). While the petitioner cites to several cases in which courts have expressed disapproval of the "willing to rely and act" language in a reasonable doubt instruction, he fails to support his claim that jurists of reason would debate the finding that the Ohio Supreme Court unreasonably applied any United States Supreme Court precedent when using this language to instruct the jury during his trial. No COA will issue for these claims.

#### e. death sentence only a recommendation instruction—claim 38

Citing *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), the petitioner contends that jurists of reason could debate the finding that the trial court's depiction of the sentence as a recommendation was not misleading because it impermissibly alleviated the jury's responsibility in rendering its decision. In *Caldwell,* the prosecutor "urged the jury not to view itself as determining whether the defendant would die, because a death sentence would be reviewed for correctness by the State Supreme Court." *Id.* at 323, 105 S.Ct. 2633. The *Caldwell* Court concluded that the defendant's death sentence was unconstitutional, because "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." *Id.* at 328–29, 105 S.Ct. 2633.

█ In this case, the jury instruction was an accurate statement of Ohio law. Thus, the petitioner has no basis on which to assert a *Caldwell*-type claim. *See Dugger v. Adams,* 489 U.S. 401, 407, 109 S.Ct. 1211, 103 L.Ed.2d 435 (1989) ("[I]f the challenged instructions accurately described the role of the jury under state law, there is no basis for a *Caldwell* claim."); *Mapes v. Coyle,* 171 F.3d 408 (6th Cir.1999) (finding no constitutional violation in Ohio sentencing recommendation instruction); *Kordenbrock v. Scroggy,* 919 F.2d 1091, 1101 (6th Cir.1990) (en banc), *cert. denied,* 499 U.S. 970, 111 S.Ct. 1608, 113 L.Ed.2d 669 (1991) (same). The Ohio Supreme Court did not unreasonably apply *Caldwell* in finding the sentencing instruction constitutionally sound. No jurist of reason would find otherwise. Thus, no COA will issue for this claim.

#### f. ineffective assistance of appellate counsel—claims 50 and 51

Finally, the petitioner seeks a COA for the denial of his ineffective appellate counsel claims. As stated in the Order, none of the grounds on which the petitioner bases his ineffective appellate counsel claims has merit. Thus, the petitioner cannot demonstrate that he was prejudiced by appellate counsel's failure to raise these issues on appeal pursuant to *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). No jurist of reason would debate this finding. No COA will issue for these claims.

#### Conclusion

In light of the foregoing, it is

ORDERED THAT the Motion for a Certificate of Appealability pursuant to 28 U.S.C. § 2253 is granted as to the procedural default of claims 18(b) and (c), 34, 50, and 51. A Certificate of Appealability will

issue as to the merits of part of claims 1 and 2.

So ordered.